Nicholas A. Carlin, State Bar No. 112532
nac@phillaw.com
David M. Given, State Bar No. 142375
dmg@phillaw.com
Meagan McKinley-Ball, State Bar No. 245375
mmb@phillaw.com
PHILLIPS, ERLEWINE & GIVEN LLP
50 California Street, 35th Floor
San Francisco, CA   94111
Tel: 415-398-0900
Fax: 415-398-0911

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELE DRAPER, MERIWETHER LEWIS GARING, JR., JOHN VALENTON, ROBERT ERSKINE, FLORA YU, JONATHAN D. SINGLETON and QUINN RANSON,<br><br>       Plaintiffs,<br><br>vs.<br><br>AMERICAN DIAGNOSTIC MEDICINE, INC., an Illinois Corporation, SAM KANCHERLAPALLI, VICKY KANCHERLAPALLI, JAN HAUSSENBAUER and DOES 4 through 50,<br><br>       Defendants.<br>_____ | CASE NO. C 09-02753 (VRW)<br><br>**NOTICE OF MOTION AND MOTION TO DISQUALIFY DEFENSE COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; COUNSEL DECLARATION (WITH EXHIBITS)**<br><br>**Date: June 3, 2010**<br>**Time: 10:00 a.m.**<br>**Crtm: 6** |

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN THAT on June 3, 2010 at 10:00 a.m., or as soon

thereafter as counsel may be heard by the above-titled Court, located at 450 Golden Gate

Avenue, 17th Floor, Courtroom 6, San Francisco, California, plaintiff MICHELE DRAPER

will, and HEREBY DOES MOVE, the Court to disqualify attorneys Todd Brian Scherwin,

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 35th Floor
San Francisco, CA  94111
(415) 398-0900

1

Timothy Joseph Murphy and Shadie Latae Berenji, as well as the law firm of Fisher & Phillips LLP, from continuing to appear on behalf of or to represent defendants in the above-captioned action or, in the alternative, for such other relief as this Court deems just, including issue preclusion, protective orders or other sanctions.

This motion is made on the ground that the aforementioned attorneys and law firm came into possession of attorney-client privileged material, including communications between plaintiff and her attorney on the subject of this lawsuit, through the extraction of embedded data from a laptop containing information pertaining to a personal email account, that they failed to notify plaintiffs' counsel of their possession of these documents for some eights months and even then it was only when plaintiffs' counsel discovered it, and that they have obstructed and failed to cooperate with plaintiffs' attempts to determine the extent to which the privileged documents were used. The possession, knowledge, and actual or potential use of the information contained in these communications by defendants and their counsel have irremediably prejudiced plaintiff in the conduct of her case, such that disqualification of counsel is the signal appropriate remedy.

In the alternative, plaintiff requests issue preclusion or entry of protective orders or such other sanction as the Court deems just under the circumstances. Should the Court deem it necessary to test the facts in more detail, plaintiff requests an evidentiary hearing before a United States Magistrate Judge to determine the particulars of when, where and how defendants and their counsel obtained, reviewed and used the documents in question.

DATED: April 26, 2010                    PHILLIPS, ERLEWINE & GIVEN LLP


By:_____/S/_____
        David M. Given
        Attorneys for Plaintiffs

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 35th Floor
San Francisco, CA  94111
(415) 398-0900

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION AND STATEMENT OF FACTS

This is an action by seven current and former employees of defendants for wage and hour violations under federal and state statutory law.  *See* Second Amended Complaint (Docket No. 31).  Significant damages flow from defendants' pattern and practice of withholding payment of earned overtime compensation and requiring its employees to work 10-12 hour days – or more – without required meal or rest periods.  *See* Joint Case Management Statement (Docket No. 20).  Plaintiffs also have additional claims for unfair competition, unjust enrichment, wrongful termination, and related causes of action, all under state law.

On April 6, 2009, defendant ADM fired plaintiff MICHELE DRAPER.  Plaintiffs filed their Complaint May 8, 2009 in state court; ADM removed it to this Court on diversity grounds. *See* Notice of Removal (Docket No. 1).  At or around that time, defendants' counsel demanded that DRAPER turn over certain company property including her company supplied laptop computer.  DRAPER complied with the request and on or about May 13, 2009 her counsel voluntarily turned the computer over to defendants.  Declaration of Nicholas A. Carlin ("Counsel Decl."), ¶3, Ex. A.

As plaintiff later learned, defendants immediately turned the computer over to an outside forensic expert to examine and extract data from it.  This expert proceeded to extract personal and confidential data from plaintiff's laptop, including attorney-client communications between plaintiff and her counsel on various subjects related to this case.  Counsel Decl., ¶¶12, 14, Exs. D, F.

Plaintiff conducted these communications via a personal web-based email account maintained at Yahoo!  *See* Counsel Decl., ¶8.  As a web-based email account, no client program (such as Outlook) resided on the laptop, and most people would not be aware that emails they had viewed on such an account could be saved on the computer.  As later recounted by defense counsel, the effort by defendants' forensic expert to mine this data included retrieval and reconstruction of certain temporary or cached files showing "internet history logs, evidence of communications[,] job searches, and names of files that had been permanently deleted by

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 35th Floor
San Francisco, CA  94111
(415) 398-0900

3

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 35th Floor
San Francisco, CA 94111
(415) 398-0900

[plaintiff]" residing on the computer's hard drive.  The data mined in this fashion – which would likely have required specialized software to extract – was subsequently turned over to defendants and their counsel.  Counsel Decl., ¶14, Ex. F.

The only reason plaintiff is aware of any of the foregoing is because the documents were eventually produced by defendants.  The timing and nature of the production of these documents is highly suspicious, however.  The documents were printed out on June 24, 2009.  *See* Counsel Decl., ¶7.  According to defense counsel, these documents were kept in a separate file at the law office of Fisher & Phillips LLP for approximately six months before their production to plaintiff.  Counsel Decl., ¶14, Ex. F.

Defendants made their initial disclosures on October 16, 2009, but did not include these documents in that disclosure.  Defendants made a supplemental disclosure of documents on November 9, 2009, but again did not turn over the laptop documents.  Defendants finally produced the laptop documents along with some 14,000 pages of other documents in a massive production on December 16, 2009 (received by plaintiffs' counsel on December 17, 2009).  This was at the height of the holiday season and only three business days before DRAPER's deposition on December 22, 2009.  *See* Counsel Decl., ¶¶4–6.

All of the laptop documents were reviewed and Bates-stamped "ADM" by defendants. The documents produced by defendants from the laptop totaled approximately 275 pages. Counsel Decl., ¶7.  To avoid publishing them in the public record of this case, plaintiff has created a log of the attorney-client communications.  Counsel Decl., ¶10, Ex. B.

At DRAPER's deposition, defense counsel used at least some of the 275 pages of documents recovered from the laptop, querying her on, and often quoting from, the documents. For example, defense counsel queried plaintiff about the circumstances of her termination from defendant(s), asking whether the termination was by "mutual agreement," a term that came directly from one of the emails extracted from the laptop.  By way of further example, defense counsel queried plaintiff about the number of people under her supervision, citing facts and circumstances recounted by plaintiff in emails extracted from the laptop.  Counsel Decl., ¶18, Ex. J.

4

It was only later, after plaintiffs' counsel had had a chance to fully review the December 16, 2009 document production, that he realized that many of the documents were privileged communications and was able to determine what had happened.  Counsel Decl., ¶¶7–9.  On February 17, 2010, plaintiffs' counsel wrote a letter demanding "full disclosure" of the circumstances of defense counsel's possession and use of these documents, together with certain remedial action.  Counsel Decl., ¶11, Ex. C.

In a faxed letter response the same day, defense counsel stated falsely that the documents in question had been "printed, bates labeled by my office's staff and produced with our initial disclosures in October."  Counsel Decl., ¶12, Ex. D.  After plaintiff's counsel pointed out that the documents had not been produced until December 16, 2009 (Counsel Decl., ¶13, Ex. E), defense counsel responded by letter on March 3, 2010, admitting that the documents were produced on December 16th, but misleadingly suggesting that the reason for the delay was because the parties' stipulated protective order was not entered until December 15, 2009.  Counsel Decl., ¶14, Ex. F.  While it is true that the protective order was entered on that date, there is no legitimate basis upon which plaintiff's personal emails could be claimed as confidential by defendants.

Defense counsel also claimed in this letter that "no documents relating to any communications between Ms. Draper and you and/or any other attorney were reviewed in preparation for Ms. Draper's depositions."  But this position is not credible.  While it is not yet clear to what extent any of defense counsel's questions were specifically based upon the privileged emails, it is not tenable to claim that defense counsel did not review those documents in preparation for the deposition.  Typically, documents of this nature are the first place counsel will look to try to find incriminating evidence, and 275 pages of documents is a relatively small number of documents to review.  At least 15 of these were obviously privileged.  Moreover, defense counsel clearly used some of the other non-privileged laptop documents in the deposition, for example ADM 2002.  This was only 8 documents away from ADM 1994, which was one of the privileged emails.  Counsel Decl., ¶10, Ex. B.

Phillips, Erlewine & Given, llp
50 California Street, 35th Floor
San Francisco, CA  94111
(415) 398-0900

5

This exchange was shortly followed by targeted discovery on the subject – one set of six interrogatories and one set of six document requests.  Counsel Decl., ¶15.

Notwithstanding these requests, plaintiff has been met with a stonewall.  Defense counsel has failed and refused to identify those individuals at the firm who had access to these documents or who otherwise reviewed, studied or analyzed the privileged documents – although counsel acknowledges that within weeks of receipt of the laptop, at least one attorney had "preliminarily reviewed" certain "spreadsheet data" derived from the laptop, and that the privileged documents were thereafter stored with other documents derived from the laptop in a separately-designated file.

The discovery responses, which arrived more recently, contain a slew of rote, boilerplate objections.  Among other things, defense counsel was unwilling to identify or produce a complete set of the documents extracted from the laptop, identify who had access or knowledge of those documents, or say whether there were communications at defense counsel's law firm or with the forensic expert about the documents or plaintiff's privileged communications.  Counsel Decl., ¶15, Ex. G.

Defense counsel has failed to offer any remedial steps.  Defense counsel has not accepted service or otherwise aided in locating the forensic expert hired by their clients, who has thus far successfully evaded service of a subpoena on him.  Counsel Decl., ¶¶16, 17, Ex. H, I. No agreement has been reached on these subjects despite the meet and confer dialogue.  Given the nature of the documents defendants and their counsel now have in their possession, the case cannot continue in the present manner without severely prejudicing plaintiff.  Counsel Decl., ¶19.

## II.  <u>ARGUMENT</u>

In a diversity case, the subject of privilege is determined under the state law that otherwise governs.  Fed. R. Evid. 501; *Star Editorial, Inc. v. District Court*, 7 F. 3d 856, 859 (9th Cir. 1993).  Under California law, applicable here, the documents in question are obviously and absolutely privileged attorney-client communications: They consist of emails between plaintiff and the attorney representing her in this case; the emails were sent and received at or

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 35th Floor
San Francisco, CA  94111
(415) 398-0900

6

around the time this case was commenced; and these emails reference and discuss the facts and circumstances of this case. *See* California Evidence Code §952 ("'confidential communication between client and lawyer' means information transmitted between a client and his or her lawyer in the course of that relationship and in confidence"); *Roberts v. City of Palmdale*, 5 Cal. 4th 363, 371 (1993) ("The attorney-client privilege applies to communications in the course of professional employment that are intended to be confidential.").

In the case of inadvertent disclosure of privileged information, federal and state law are in accord. Examining or using obviously privileged documents belonging to an adverse party constitutes an ethical violation and subjects the party and its attorney to sanctions or disqualification (or both). *Gomez v. Vernon*, 255 F. 3d 1118, 1133-34 (9th Cir. 2001) (applying federal law; invoking inherent power of court to sanction); *State Comp. Ins. Fund v. WPS, Inc.*, 70 Cal. App. 4th 644, 652-54 (1999) (applying California law).

Importantly, as shown in the attorney correspondence on the subject, defendants took extraordinary measures to recover the documents in question – employing and, presumably, paying for an outside forensic computer expert to mine data that (as defense counsel admits) were not readily obtainable from the laptop. In short, by necessity, defendants had to intentionally seek out and acquire the inadvertently disclosed information in question.

Moreover, the documents were Bates-stamped and produced by defendants as part of their supplemental initial disclosure in this case. Under FRCP 26(a)(1), an initial disclosure is a party's representation to the other side of those documents in the disclosing party's "possession, custody, or control" that the party "may use to support its claims or defenses." Thus, while the precise nature and scope of defense counsel's review of these documents may remain in question – given the responses received thus far to plaintiff's discovery on the subject (including, ironically, the assertion of privilege) – whether defense counsel actually reviewed the documents (and intended to rely upon them in the defense of this case) is not.

*Rico v. Mitsubishi Motors Corp.*, 42 Cal. 4th 807 (2007), is the controlling case in California on the subject. *Rico* reaffirmed the California standard for the protection of

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 35th Floor
San Francisco, CA  94111
(415) 398-0900

7

privileged information articulated in *State Comp. Ins. Fund v. WPS, Inc*., *supra*, 70 Cal. App. 4th at 656-57.

In *Rico*, plaintiff acquired defense counsel's notes of a meeting with two designated defense experts to discuss litigation strategy.  While the circumstances surrounding how plaintiff acquired these notes were in question (requiring an evidentiary hearing that ultimately concluded that, unlike here, it was through inadvertence), plaintiff's counsel had reviewed the document.  Indeed, in a fashion similar to that here, defense counsel learned that plaintiff had acquired the notes when his counsel used them at a deposition.

On motion, the trial court disqualified plaintiff's counsel; the appellate court affirmed. On review, the California Supreme Court considered the "ethical duty [plaintiff's counsel] owed once he received" the privileged documents.  The Supreme Court adopted the following rule:

> When a lawyer who receives materials that obviously appear to be subject to an attorney-client privilege or otherwise clearly appear to be confidential and privileged and where it is reasonably apparent that the materials were provided or made available through inadvertence, the lawyer receiving such materials should refrain from examining the materials any more than is essential to ascertain if the materials are privileged, and shall immediately notify the sender that he or she possesses material that appears to be privileged.  The parties may then proceed to resolve the situation by agreement or may resort to the court for guidance with the benefit of protective orders and other judicial intervention as may be justified.

*Rico, supra,* 42 Cal. 4th at 817.

The Supreme Court found that plaintiff's counsel's "admissions and subsequent conduct clearly demonstrate that he violated [this] rule" and that "the trial court did not abuse its discretion by ordering disqualification [of counsel] for violation of [this] rule."  *Id*. at 819.  In *Rico*, the evidentiary record included a hearing on the matter, ordered by the trial court. To the extent necessary and appropriate, plaintiff requests an evidentiary hearing on the matter here before a Magistrate Judge.

Nonetheless, the direct evidence, consisting of admissions and conduct of defense counsel known thus far to plaintiff, show a blatant violation of the above applicable rule:

• The material in question is obviously privileged, and deals directly with the subject matter of this case;

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 35th Floor
San Francisco, CA 94111
(415) 398-0900

8

- Plaintiff's disclosure of this material was inadvertent;

- Defense counsel obtained this material through the concerted effort of its expert;

- Defense counsel received, reviewed, and Bates-stamped the documents in question;

- Defense counsel had this material in its possession for almost six months before producing it as part of defendants' supplemental initial disclosures in the case;

- Defense counsel delayed producing this material until a protective order was in place, even though the documents extracted from the laptop were clearly plaintiff's personal information and not confidential to defendant; and

- Defense counsel failed to notify plaintiff's counsel at any time that it had possession of this material – rather, plaintiff's counsel was forced to bring it to the attention of defense counsel and to demand an explanation.

Moreover, there is substantial indirect evidence suggesting a more serious violation of the rule than the one admitted to by defense counsel in its correspondence on the subject:

- Defense counsel has given false and non-credible explanations for what happened;

- Defense counsel does not deny that individuals at its law firm reviewed, studied and analyzed the privileged documents, but have blocked all efforts to determine how the documents were reviewed or used;

- Defense counsel gave plaintiff an incorrect address for its forensic computer expert, who has since evaded service;

- Defendants have objected and invoked the privilege in response to plaintiff's discovery on the subject (the Court may draw an adverse inference);

- Defense counsel used many of the documents recovered from the laptop (and many in close Bates-numbered proximity to plaintiff's attorney-client communications) at plaintiff's deposition; and

- Defendants have offered no remedial steps addressing the foregoing (other than a promise not to look at the documents again).

9

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 35th Floor
San Francisco, CA 94111
(415) 398-0900

### III.  <u>CONCLUSION</u>

For all the foregoing reasons, the Court should disqualify defense counsel from further participation in this case.  In the alternative, the Court should provide such other relief via judicial intervention (including issue preclusion, entry of protective order(s) or other sanctions) as this Court deems just.

DATED: April 26, 2010                          PHILLIPS, ERLEWINE & GIVEN LLP


By:_____/S/_____
        David M. Given
        Attorneys for Plaintiffs

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 35ᵗʰ Floor
San Francisco, CA  94111
(415) 398-0900

NOTICE OF MOTION AND MOTION TO DISQUALIFY DEFENSE COUNSEL, ETC. – C 09-02753 VRW

**DECLARATION OF NICHOLAS A. CARLIN**

Nicholas A. Carlin declares:

1.    I am a partner with Phillips, Erlewine & Given LLP, counsel for plaintiffs in this action.  The matters stated in this declaration are based upon my personal knowledge.

2.    This case was originally filed in the California Superior Court on May 8, 2009.

3.    At or about that time, I received a request from defense counsel to plaintiff Michele Draper for return of certain information and property in connection with her employment by ADM.  Ms. Draper thereafter complied with the request and voluntarily turned over various items, including a company laptop computer, to defendants.  Attached hereto as Exhibit A is a true and correct copy of my May 13, 2009 letter to defense counsel on the subject. Shortly thereafter, defense counsel sent a messenger to my office to pickup the laptop, after which I heard nothing more on the subject.

4.    Defendants made their initial disclosures on October 16, 2009.  That disclosure consisted entirely of time records for the plaintiffs.  It did not include any documents that were extracted from the laptop.  Defendants made a supplemental disclosure of documents on November 9, 2009.  This included the plaintiffs' personnel files, but again did not include any of the laptop documents.

5.    Around this time period, the parties agreed to stipulate to a protective order for confidential documents.  The Order was eventually signed and filed on or about December 14, 2009.

6.    On December 17, 2009, we received from defendants a Supplemental Initial Disclosure production of over 14,000 pages of documents.  This was three business days before Ms. Draper's deposition on December 22, 2009.  The deposition proceeded before I had a chance to review these over 14,000 pages of documents in any detail.  Most of the documents were emails and internal ADM documents, but they also included (although I did not realize it at this time) the documents extracted from Ms. Draper's laptop.  These documents were not designated or organized in any way indicating their source as the laptop computer.

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 35th Floor
San Francisco, CA  94111
(415) 398-0900

11

7.      Following Ms. Draper's deposition (and the holiday season), I completed my review of the December 17, 2009 document production.  At that time I realized that documents Bates-stamped "ADM 1940-2214" (275 pages) appeared to have been extracted by forensic means from Ms. Draper's laptop.  They each have a print date of "6/24/2009" and each one has what appears to be a file name printed at the top right that I recognized as a file name generally associated with cached web pages from internet browsing, for example "file://c:/DOCUME~1/TSCHER~1/LOCALS~1/Temp/Temporary..."  So, for example, if a user happened to log into her web-based Yahoo! email account to read an email on the web page, the computer would store that web page in one of these cached or "Temp" files.

8.      The laptop documents consist of personal email correspondence through Ms. Draper's Yahoo! email account, personal banking and financial data, personal travel information and personal job search data.  Many pages reflecting a Yahoo! email account caption are blank, but these pages do not indicate whether content has been redacted or deleted from them.  Although these documents contain Ms. Draper's personal information, ADM has designated these documents as "Confidential."

9.      I also discovered that these documents included privileged communications between my firm and Ms. Draper.  These documents fall into two categories.  The first category consists of what appear to be screen shots of plaintiff's inbox from her personal email account at Yahoo!  These screen shots include on them emails from me with the date/time of the correspondence together with the size of the file (indicating the size of the message and attachment) as well as the subject lines (all of which refer to subjects relating to this case).  The second category consists of copies of four emails between me and plaintiff (one is a copy of an email to another plaintiff in this case) on subjects directly related to this case – for example, matters detailing issues like the drafting of the complaint (filed soon thereafter), calculation of damages, the subject of meal breaks and employee shifts, and plaintiff's new employment.

10.     To avoid publishing them in the public record of this case, my office created a log of the foregoing documents.  Attached hereto as Exhibit B is a true and correct copy of that

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 35ᵗʰ Floor
San Francisco, CA  94111
(415) 398-0900

12

log.  If the Court wishes, plaintiff can provide copies of the documents for the Court's *in camera* review.

11.     On February 16, 2010, I wrote a letter informing defense counsel of what I had discovered and demanding "full disclosure" of the circumstances together with certain remedial action.  Attached hereto as Exhibit C is a true and correct copy of my February 16, 2010 letter on the subject.

12.     Attached hereto as Exhibit D is a true and correct copy of defense counsel's letter to me of February 17, 2010.

13.     Attached hereto as Exhibit E is a true and correct copy of my letter to defense counsel of March 1, 2010.

14.     Attached hereto as Exhibit F is a true and correct copy of defense counsel's letter to me of March 3, 2010.

15.     This correspondence was followed within a week by targeted discovery directed to specific matters relating to the retrieval and use of these documents by defense counsel. Attached hereto as Exhibit G are true and correct copies of defendant's responses to the discovery directed to the foregoing subject.

16.     I also issued a subpoena to the forensic expert identified by defense counsel, returnable for an April 1, 2010 deposition together with a document production.  Attached hereto as Exhibit H is a true and correct copy of that subpoena.

17.     The address given by defense counsel in his March 3, 2010 letter identifying the forensic expert proved to be incorrect – although the expert is employed by the firm located there (my office confirmed this via telephone), the process server was told that the individual did not work at that location and the firm was unwilling to accept service.  Another address for the firm (acquired via a public records search) also proved fruitless.  Attached hereto as Exhibit I is a true and correct copy of a declaration of due diligence from our process server, together with our office's public records search.  We have since asked for defense counsel's cooperation in accepting service of the subpoena and setting a date for the expert's deposition, but defense counsel has failed thus far to do so.

13

NOTICE OF MOTION AND MOTION TO DISQUALIFY DEFENSE COUNSEL, ETC. – C 09-02753 VRW

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 35th Floor
San Francisco, CA  94111
(415) 398-0900

18.     Attached as Exhibit J is a true and correct copy of excerpts from Ms. Draper's deposition transcript.  Defense counsel's questions from page 52, line 5 through page 53 line 13 reference information that is contained in laptop document ADM 2002.  I am not aware of any other means by which defense counsel could have obtained this information apart from review of the laptop documents.

19.  Given the nature of the documents defendants and their counsel now have in their possession, it is my judgment that the case cannot continue in the present manner without the possibility of severe prejudice to plaintiff.  While there has been meet and confer dialogue on this subject, no agreement has been reached between counsel, and defense counsel has neither implemented nor offered any meaningful remedial steps.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 26th day of April, 2010, at San Francisco, California.


_____/S/_____
Nicholas A. Carlin

PHILLIPS, ERLEWINE & GIVEN, LLP
50 California Street, 35th Floor
San Francisco, CA  94111
(415) 398-0900

14

# EXHIBIT A

# PHILLIPS, ERLEWINE & GIVEN LLP

ATTORNEYS AT LAW
50 CALIFORNIA STREET, 35ᵀᴴ FLOOR
SAN FRANCISCO, CALIFORNIA 94111
TELEPHONE (415) 398-0900
FAX (415) 398-0911
WWW.PHILLAW.COM

NICHOLAS A. CARLIN
nac@phillaw.com

May 13, 2009

**_By Fax (949-851-0152) and US Mail_**
Todd B. Scherwin
Fischer & Phillips LLP
Suite 1000
2050 Main Street
Irvine, CA 92614

Re:    Michele Draper

Dear Mr. Scherwin:

In response to your request, Ms. Draper has brought the ADM property you requested to my office: a laptop, one Baxa pump, a cell phone and power cord.

They are available for you to pick up from my office any time, just let us know in advance when you want to send someone to come by.

The allegations in your letter regarding misuse of ADM trade secrets and confidential information are entirely baseless. Any information that Ms. Draper has about the medical testing industry she already knew from her years in the industry before she joined ADM. She never signed any confidentiality or non-solicitation agreement with ADM and, in any event, as you are undoubtedly aware, she is free to compete with ADM pursuant to California Bus. & Prof. Code §16600 if she so chooses.

On the contrary, it is ADM that is liable to Ms. Draper and its other employees for unpaid overtime, meal and rest break premium pay, unreimbursed business expenses, and related claims, as well as for wrongful termination of Ms. Draper. You will be receiving our Complaint shortly (if you haven't already), and I would be happy to discuss a resolution of such claims with you when you are ready.

Very truly yours,

Nicholas A. Carlin

EXHIBIT B

LOG OF PRIVILEGED
DOCS PRODUCED BY ADM

| Bates No. | Document | From | To | Date | Subject/Info |
|---|---|---|---|---|---|
| ADM01964 | Yahoo! Mail screenshot | n/a | n/a | 6/24/2009 | One email from NAC on subject of case |
| ADM01974 | Yahoo! Mail screenshot | n/a | n/a | 6/24/2009 | Two emails from NAC on subject of case |
| ADM01976 | Yahoo! Mail screenshot | n/a | n/a | 6/24/2009 | Three emails from NAC on subject of case |
| ADM02077 | Yahoo! Mail screenshot | n/a | n/a | 6/24/2009 | Four emails from NAC on subject of case |
| ADM02115 | Yahoo! Mail screenshot | n/a | n/a | 6/24/2009 | Four emails from NAC on subject of case |
| ADM02117 | Yahoo! Mail screenshot | n/a | n/a | 6/24/2009 | Three emails from NAC on subject of case |
| ADM02153 | Yahoo! Mail screenshot | n/a | n/a | 6/24/2009 | One email from NAC on subject of case |
| ADM02170 | Yahoo! Mail screenshot | n/a | n/a | 6/24/2009 | One email from NAC on subject of case |
| ADM02189 | Yahoo! Mail screenshot | n/a | n/a | 6/24/2009 | Three emails from NAC on subject of case |
| ADM02205 | Yahoo! Mail screenshot | n/a | n/a | 6/24/2009 | Three emails from NAC on subject of case |
| ADM02209 | Yahoo! Mail screenshot | n/a | n/a | 6/24/2009 | Three emails from NAC on subject of case |
| ADM01994 | Email from Yahoo! Mail | NAC | Draper | 5/5/2009 | Draft Complaint, Overtime Calculations |
| ADM02147 | Email from Yahoo! Mail | Singleton | NAC | 5/5/2009 | Draft Complaint, Meal Breaks |
| ADM02148 | Email from Yahoo! Mail | NAC | Draper | 5/7/2009 | Draft Complaint, Draper's new business |
| ADM02183 | Email from Yahoo! Mail | Draper | NAC, Draper | 5/7/2009 | Forwarded message re: employee shifts |

EXHIBIT C

# PHILLIPS, ERLEWINE & GIVEN LLP

ATTORNEYS AT LAW
50 CALIFORNIA STREET, 35TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111
TELEPHONE (415) 398-0900
FAX (415) 398-0911
WWW.PHILLAW.COM

NICHOLAS A. CARLIN
nac@phillaw.com

February 16, 2010

**_By Fax (949-851-0152) and US Mail_**
Todd B. Scherwin
Fischer & Phillips LLP
2050 Main Street, Suite 1000
Irvine, CA 92614

Re:     _Draper et al. v. American Diagnostic Medicine, Inc._

Dear Todd,

We regret having to write this letter, but we are deeply troubled that it appears that your firm has violated its ethical duties regarding receipt of attorney client privileged information.

Upon review of documents produced by ADM, we have just noticed that there are numerous printouts of web pages showing Ms. Draper's web based Yahoo email account inbox which reference emails to and from me. The subject lines of these emails are confidential attorney client communications in and of themselves in that they provide information about what Ms. Draper and I were discussing at various points in time. The specific document numbers are: ADM 1964, 1974, 1976, 2077, 2115, 2117, 2153, 2170, 2189, 2205, 2209.

Even worse, you have produced print outs of some of the actual emails: ADM 1994, 2147, 2148, 2183, each of which contains meaningful confidential content which could be used to ADM's unfair advantage in this lawsuit.

It is clear from the file names that these documents were taken off of Ms. Draper's company laptop hard drive. The laptop was returned to ADM at your request on June 2, 2009. We were not aware that it contained privileged material on it at the time since Ms. Draper did not knowingly save or store these emails on her laptop. They are from a web based Yahoo account, not an email client program resident on the computer. They were apparently stored in Temp files as copies of the Yahoo email account web pages she viewed from the laptop. It is apparent that you have used forensic methods to search through and recover these emails from the Temp files. Such disclosure was clearly inadvertent and does not constitute a waiver of the privilege. Federal Rule 502. It is equally clear that your actions in recovering these privileged documents were deliberate.

As you should be aware, the California Supreme Court has held in _Rico v. Mitsubishi Motors_ (2007) 42 Cal.4[th] 807 that "When a lawyer who received material that obviously

1

appear to be subject to the attorney client privilege or otherwise clearly appear to be confidential and privileged and where it is reasonably apparent that the materials were provided through inadvertence, the lawyer receiving such materials should refrain from examining the materials any more than is essential to ascertain if the materials are privileged, and <u>shall immediately notify the sender</u> that he or she possesses material that appears to be privileged." (*Citing with approval State Comp. Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644, *emphasis added*).

You did not do so. Instead, since these documents were produced as part of ADM's initial disclosures, by definition, ADM has represented that it intends to use these documents in support of its defenses in this case.

This is a very serious matter. Pursuant to *Rico* and Federal Rule 26(b)(5)(B), you are hereby instructed to immediately:

    - sequester and destroy all copies, electronic and hard copy, of all such privileged communications;
    - not use or disclose the information contained in such documents;
    - provide full disclosure to us as to how you obtained such documents;
    - provide full disclosure as to how such documents have been used by you thus far in this litigation (including in connection with preparation for Ms. Draper's deposition), including providing us with copies of all documents that refer in any way to such emails;
    - advise us if you have reviewed any other such emails that have not been produced thus far;
    - advise us if you have reviewed any attachments to these emails (which include such things as drafts of the complaint and fee agreements); and
    - identify each person who has seen any of the privileged documents.

The foregoing is without prejudice to any other remedies we may pursue, including but not limited to disqualification.

We look forward to your anticipated cooperation.

Very truly yours,

Nicholas A. Carlin

# EXHIBIT D

# FISHER & PHILLIPS LLP
## ATTORNEYS AT LAW

www.laborlawyers.com

**Irvine**
Suite 1000
2050 Main Street
Irvine, CA  92614-8240

(949) 851-2424 Tel
(949) 851-0152 Fax

Writer's Direct Dial:
(949) 798-2181

Writer's E-mail:
tscherwin@laborlawyers.com

February 17, 2010

<u>**Via Facsimile and Mail**</u>

Nicholas A. Carlin, Esq.
PHILLIPS, ERLEWINE & GIVEN
50 California Street, 35th Floor
San Francisco, CA 94111

     Re:    *Michele Draper, et al. v. American Diagnostic Medicine*

Dear Mr. Carlin:

       Thank you for your letter from February 16th regarding the document production and the potentially attorney-client privileged documents produced by my office. I appreciate you bringing this issue to my attention and wish I could have responded yesterday but I was out of the office at a deposition all day.

       Please rest assured that my office has not knowingly reviewed any attorney-client privileged documents and does not wish to do so. In fact, upon receiving your letter, I did not review the documents outlined in your letter so that I could be sure that there was no issue with a violation of the privilege.

       To give you a bit of background, which you are mostly aware of, upon being notified that Ms. Draper was still in possession of ADM's computer, you and I discussed the return of this computer. I believe a courier picked up the computer from your office in or around June, which my received then immediately turned over to a computer forensic expert. Items recovered from the computer were printed, bates labeled by my office's staff and produced with our initial disclosures in October. Our office never knowingly reviewed any attorney-client communication. Specifically, all documents related to ADM or Ms. Draper's employment were simply pulled off of the ADM issued laptop computer and produced with our initial disclosures.

       So that I can be sure which documents you are talking about and the extent of the apparent attorney-client privileged communication contained on them, I would like to set up a conference call with you tomorrow to discuss. Moreover, other than what was produced already, there are no further documents contained on the laptop computer that were recovered and withheld from production that pertained in any way to ADM. If my office had been aware that there was obvious attorney-client privileged documents we would have notified you immediately. I think that with the thousands of documents that were reviewed in the case, as you can attest, sometimes documents do not get reviewed as closely as they should be.

Atlanta · Charlotte · Chicago · Columbia · Dallas · Denver · Fort Lauderdale · Houston · Irvine · Kansas City
Las Vegas · New Jersey · New Orleans · Orlando · Philadelphia · Portland · San Diego · San Francisco · Tampa
Irvine 612851.1

Nicholas A. Carlin, Esq.
February 17, 2010
Page 2


      Lastly, I did not review, nor will I review, any of the documents listed in your letter in preparation for Ms. Draper's deposition nor any other depositions.

      I look forward to your response so we can work through this issue.

                     Sincerely,

                     TODD B. SCHERWIN
                     For FISHER & PHILLIPS LLP

TBS:dmjw

cc:   Timothy Murphy, Esq.

# EXHIBIT E

# PHILLIPS, ERLEWINE & GIVEN LLP

ATTORNEYS AT LAW
50 CALIFORNIA STREET, 35TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111
TELEPHONE (415) 398-0900
FAX (415) 398-0911
WWW.PHILLAW.COM

NICHOLAS A. CARLIN
nac@phillaw.com

March 1, 2010

**By Fax (949-851-0152) and US Mail**
Todd B. Scherwin
Fischer & Phillips LLP
2050 Main Street, Suite 1000
Irvine, CA 92614

Re:   *Draper et al. v. American Diagnostic Medicine, Inc.*

Dear Todd,

This will follow up on my letter regarding the privileged documents issue.

Upon further review, we continue to have serious concerns about this matter. You indicate in your letter of February 17, 2010 that the laptop documents were produced with ADM's initial disclosures in October 2009. In fact, they were not produced until December 16, 2009, received by us on December 17, just three business days before Ms. Draper's deposition on December 22, and at the height of the holiday season.

You indicate that thousands of documents were produced, but most of those are timesheets. The laptop documents only comprise some 300 documents, you have had them since June 2009, and it is clear from the deposition of Ms. Draper that at least some of these documents were used in preparation for the deposition.

Accordingly, in order to more fully evaluate this matter, we would appreciate it if you would provide us with more specifics about who actually extracted the laptop documents, who reviewed them and when, and any memos, emails or other documents discussing the laptop documents. Please also provide us with the laptop so may conduct our own forensic evaluation. In the absence of voluntary cooperation, we intend to exercise our rights under the federal rules.

Very truly yours,

Nicholas A. Carlin

EXHIBIT F

# FISHER & PHILLIPS LLP
### ATTORNEYS AT LAW

www.laborlawyers.com

**Irvine**
Suite 1000
2050 Main Street
Irvine, CA 92614-8240

(949) 851-2424 Tel
(949) 851-0152 Fax

Writer's Direct Dial:
(949) 798-2181

Writer's E-mail:
tscherwin@laborlawyers.com

March 3, 2010

**Via Facsimile and Mail**

Nicholas A. Carlin, Esq.
PHILLIPS, ERLEWINE & GIVEN
50 California Street, 35th Floor
San Francisco, CA 94111

Re:     *Michele Draper, et al. v. American Diagnostic Medicine*

Dear Mr. Carlin:

This letter is a response to your letter from March 1, 2010 and a follow-up to my letters from February 17th and February 22nd regarding the inadvertent disclosure of the potentially attorney-client privileged documents produced by my office that were recovered from ADM's laptop computer issued to Ms. Draper.

The documents produced by my office as part of our initial disclosures on December 16, 2009 included thousands of emails that were produced on a CD as well as contracts, and documents that were printed out from Ms. Draper's company issued laptop computer that your office had previously returned to my office.

By way of background, we first received the company issued laptop computer on June 4, 2010 from your office after we had demanded it back. Upon receipt of the laptop computer from your office, the laptop computer was picked up on June 5, 2010 by Talon Cyber Tec c/o Todd Stephan located at 151 Kalmus Drive Suite A-103, Costa Mesa, California 92626. Notably the computer was never opened or reviewed by my office before handing it over to Mr. Stephan. Mr. Stephan has been in possession of the computer since that time. Initial general spreadsheet data was produced to us on June 12, 2010 and preliminarily reviewed by me on June 15, 2010. Additionally data was provided to my office on June 23, 2009 and on June 26, 2009 all the documents were printed and placed in a folder. What was generally provided to my office (without us waiving attorney work product) were internet history logs, evidence of communication between Ms. Draper and current and former employees of ADM, job searches, and names of files that had been permanently deleted by the computer's user. Documents containing relevant information within search parameters (which did not include words that would be considered to trigger attorney-client communication) were all printed out by me and placed in my office's file folder. On November 24, 2009 we provided the stipulated protective order for your review so we could produce the roughly 14,000 emails that were sent from or received by your clients. On December 9, 2009 the protective order was finalized and sent to

Atlanta · Charlotte · Chicago · Columbia · Dallas · Denver · Fort Lauderdale · Houston · Irvine · Kansas City
Las Vegas · New Jersey · New Orleans · Orlando · Philadelphia · Portland · San Diego · San Francisco · Tampa

Irvine 615945.1

Nicholas A. Carlin, Esq.
March 3, 2010
Page 2

Judge Walker for his signature and signed on December 15, 2009. Between December 1, 2009 and December 15, 2009 the 14,000+ emails were reviewed by Ms. Berenji so that we could produce them pursuant to Judge Walker's order and our promise to you to get all of those emails out to you once the protective order was signed. On December 16, 2009 Ms. Berenji produced the 14,000+ emails to you on a CD and also at that time had our office service staff bates label (ADM 1896-2214) the nuclear medicine agreements as well as the documents printed from the laptop that had been placed in the folder on June 26, 2009 to be produced in conjunction with the CD.

Moreover, no documents relating to any communications between Ms. Draper and you and/or any other attorney were reviewed in preparation for Ms. Draper's depositions. I can only assume that when you say that "some of these documents" were reviewed for Ms. Draper's deposition you are referring to documents relating to her job search and her job duties while at ADM which can in no way be considered privileged.

Additionally, we do not want to get into a debate regarding whether documents or emails contained on a company issued computer are private or privileged in any way in light of a company policy that states that an employee should have no expectation or privacy in using the internet or company property. We also would like to put this issue behind us and focus on the issues at hand in this matter and do not wish to maintain or review any documents that contain correspondence between you and your client(s). However, please understand that you must establish that documents are in fact privileged and provide the information to us on what we should do with the documents after we have had an opportunity to discuss with you the nature of the privilege.

As for the "printouts" you refer to in your letter from February 16th we are uncertain how print out screens of Ms. Draper's Yahoo based email account are privileged because they may show that she sent an email to you or your office. As you know, recovered from ADM's laptop computer that was issued to Ms. Draper were cached screen shots showing that Ms. Draper actively used her Yahoo email account on the laptop computer. Contained in these screen shots were the dates, author, and subject of certain emails that Ms. Draper sent after her employment with ADM ended. As such, none of this information appears to be privileged. Moreover, if my memory serves me correctly, these screen shots contained dozens of different emails many of which according to Mr. Stephan were not recoverable because they had not been opened on the computer. In other words there was no way of reading the emails or knowing what the emails were about just by looking at the cached screen shots.

Lastly, if you wish to have a copy of the computer forensically reviewed, we can attempt to arrange that through Talon Cyber Tech through a supervised inspection demand.

//

Irvine 615945.1

Nicholas A. Carlin, Esq.
March 3, 2010
Page 3

I look forward to your response so we can work through this issue.

Sincerely,

TODD B. SCHERWIN
For FISHER & PHILLIPS LLP

TBS:dmjw

cc:   Timothy Murphy, Esq.
      Shadie Berenji, Esq.

# FISHER & PHILLIPS LLP
## ATTORNEYS AT LAW

[www.laborlawyers.com](http://www.laborlawyers.com)

**Irvine**
Suite 1000
2050 Main Street
Irvine, CA 92614-8240
(949) 851-2424 Tel
(949) 851-0152 Fax

March 3, 2010

Sender's Direct Dial:
(949) 798-2181

Sender's E-mail:
tscherwin@laborlawyers.com

## FACSIMILE COVER PAGE

**SENT TO:**       Nicholas A. Carlin, Esq.

**COMPANY:**       PHILLIPS, ERLEWINE & GIVEN

**FAX NO.:**       (415) 398-0911       **PHONE NO.:**   (415) 398-0900

**SENT BY:**       Todd B. Scherwin, Esq.

**RE:**       *Michele Draper, et al. v. American Diagnostic Medicine*

**TOTAL PAGES:**   ~~3~~ 2
(INCLUDING THIS COVER PAGE)

*Original will NOT follow by mail if this box is checked* ☐

**SPECIAL INSTRUCTIONS:**

Please see attached correspondence.

**SECRETARY:**       Dorothy Mj. Wang
**CLIENT/MATTER:**   24062.0011

The information contained in this transmission is confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone collect, and return the original message to us at the above address via U.S. Mail. We will reimburse you for postage. Thank you.

Atlanta · Charlotte · Chicago · Columbia · Dallas · Denver · Fort Lauderdale · Houston · Irvine · Kansas City
Las Vegas · New Jersey · New Orleans · Orlando · Philadelphia · Portland · San Diego · San Francisco · Tampa

Irvine 564247.1

EXHIBIT G

1   TIMOTHY J. MURPHY, Bar No. 54200
    Email: tmurphy@laborlawyers.com
2   TODD B. SCHERWIN, Bar No. 239848
    Email: tscherwin@laborlawyers.com
3   SHADIE L. BERENJI, Esq., Bar No. 235021
    Email: sberenji@laborlawyers.com
4   FISHER & PHILLIPS LLP
    2050 Main Street, Suite 1000
5   Irvine, California 92614
    Telephone (949) 851-2424
6   Facsimile (949) 851-0152

7   Attorneys for Defendants
    AMERICAN DIAGNOSTIC MEDICINE, INC., SAM KANCHERLAPALLI,
8   VICKY KANCHERLAPALLI and JANET HAUSENBAUER

9

10                  UNITED STATES DISTRICT COURT

11       FOR THE NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO

12

13   MICHELE DRAPER, MERIWETHER          Case No. C 09-02753 VRW
     LEWIS GARING, JR., JOHN VALENTON,
14   ROBERT ERSKINE, FLORA YU,
     JONATHAN D. SINGLETON and QUINN     DEFENDANT AMERICAN DIAGNOSTIC
15   RANSON,                             MEDICINE, INC.'S RESPONSE TO
                                         PLAINTIFF LEWIS GARING, JR.'S
16                                       INTERROGATORIES (SET ONE)
17               Plaintiffs,
         vs.
18
     AMERICAN DIAGNOSTIC MEDICINE,
19   INC., an Illinois Corporation, SAM
     KANCHERLAPALLI, VICKY
     KANCHERLAPALLI, JAN
20   HAUSSENBAUER and DOES 4 through 50,

21               Defendants.

22

23   PROPOUNDING PARTY:   Plaintiff, LEWIS GARING, JR.

24   RESPONDING PARTY:    Defendant, AMERICAN DIAGNOSTIC MEDICINE, INC.

25   SET NUMBER:          ONE

26       Pursuant to California Rule 33 of the *Federal Rules of Civil Procedure*, Defendant

27   AMERICAN DIAGNOSTIC MEDICINE, INC. ("Defendant") responds to Plaintiff LEWIS

28   GARING, JR.'s first set of interrogatories (the "Interrogatories") as follows:

## RESPONSES TO SPECIAL INTERROGATORIES

**SPECIAL INTERROGATORY NO. 1.**

Provide all contact information for David Zamuda, including but not limited to home address, work/employer name and address, all telephone numbers and all email addresses.

**RESPONSE TO SPECIAL INTERROGATORY NO. 1.**

Objection. This interrogatory seeks to infringe upon the privacy rights of third parties. Specifically, this interrogatory calls for information contained in third party personnel files. Defendant, as the custodian of private information, has the duty to resist attempts at unauthorized disclosure and the person who is the subject of it is entitled to expect that his or her right will thus be asserted.

**SPECIAL INTERROGATORY NO. 2.**

Identify each and every individual (including but not limited to parties, ADM employees, attorneys, paralegals, experts, staff) who reviewed any documents (whether in paper or electronic form) which were recovered from Michele Draper's laptop (the "LAPTOP") at any time since she returned the LAPTOP to ADM after her termination.

**RESPONSE TO SPECIAL INTERROGATORY NO. 2.**

Objection. This interrogatory improperly seeks information protected by the attorney-client privilege and/or work product doctrine. Additionally, this interrogatory purports to require information which, at least in part, is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Moreover, this interrogatory is vague, ambiguous, and overbroad. Defendant is unable, without speculating, to determine what the terms "identify" "reviewed" and "recovered" as used herein are intended to mean. Moreover, this interrogatory is overbroad in scope, harassing, unduly burdensome and oppressive.

**SPECIAL INTERROGATORY NO. 3.**

Identify each and every individual (including but not limited to parties, ADM employees, attorneys, paralegals, experts, staff) with knowledge of the extraction of information from the LAPTOP.

//

1 | **RESPONSE TO SPECIAL INTERROGATORY NO. 3.**

2 |     Objection. This interrogatory improperly seeks information protected by the attorney-

3 | client privilege and/or work product doctrine. Additionally, this interrogatory purports to

4 | require information which, at least in part, is neither relevant nor reasonably calculated to lead

5 | to the discovery of admissible evidence. Moreover, this interrogatory is vague, ambiguous, and

6 | overbroad. Defendant is unable, without speculating, to determine what the terms "identify"

7 | "knowledge" and "extraction" as used herein are intended to mean. Moreover, this

8 | interrogatory is overbroad in scope, harassing, unduly burdensome and oppressive.

9 | **SPECIAL INTERROGATORY NO. 4.**

10 |     Identify each and every individual (including but not limited to parties, ADM

11 | employees, attorneys, paralegals, experts, staff) with knowledge of the review of information

12 | extracted from the LAPTOP.

13 | **RESPONSE TO SPECIAL INTERROGATORY NO. 4.**

14 |     Objection. This interrogatory improperly seeks information protected by the attorney-

15 | client privilege and/or work product doctrine. Additionally, this interrogatory purports to

16 | require information which, at least in part, is neither relevant nor reasonably calculated to lead

17 | to the discovery of admissible evidence. Moreover, this interrogatory is vague, ambiguous, and

18 | overbroad. Defendant is unable, without speculating, to determine what the terms "identify"

19 | "knowledge of the review of information extracted" as used herein is intended to mean.

20 | **SPECIAL INTERROGATORY NO. 5.**

21 |     Identify each and every individual from whom YOU have obtained a Written or

22 | recorded statement in connection with this case, and for each such statement, state when it was

23 | obtained.

24 | **RESPONSE TO SPECIAL INTERROGATORY NO. 5.**

25 |     Objection. This interrogatory may seek information protected by the attorney-client

26 | privilege and/or work product doctrine. This interrogatory is also compound. Moreover, this

27 | interrogatory is vague, ambiguous, and overbroad. Defendant is unable, without speculating, to

28 |

ADM's Response to Plaintiff Garing's Interrogatories (Set One)
Case No. C 09-02753 VRW

Irvine 618810.1

1 determine what the terms "identify" and "written or recorded statement" as used herein are

2 intended to mean.

3     However, without waiving the foregoing objections, Defendant responds as follows:

4     No written or recorded statements have been obtained in connection with this case.

5 **SPECIAL INTERROGATORY NO. 6.**

6     If your insurance carrier has asserted a reservation of rights in connection with this case,

7 please describe in detail each and every stated ground for such reservation of rights.

8 **RESPONSE TO SPECIAL INTERROGATORY NO. 6.**

9     Objection. This interrogatory purports to require information which is neither relevant

10 nor reasonably calculated to lead to the discovery of admissible evidence. Moreover, this

11 interrogatory is vague, ambiguous, and overbroad. Defendant is unable, without speculating, to

12 determine what the term "describe in detail" as used herein is intended to mean. Finally, this

13 interrogatory improperly attempts to seek the contents of a reservation of rights letter in

14 violation of FRCP 26.

15

16 Date: April 7, 2010                FISHER & PHILLIPS LLP

17

18               By:

19                         TIMOTHY J. MURPHY

20                         ~~TODD B. SCHERWIN~~

21                         SHADIE L. BERENJI
                            Attorneys for Defendants
                            AMERICAN DIAGNOSTIC MEDICINE,

22                         INC., SAM KANCHERLAPALLI,
                        VICKY KANCHERLAPALLI and

23                         JANET HAUSENBAUER

24

25

26

27

28

4

Irvine 618810.1

**VERIFICATION**

1
2  I, JAN HAUSENBAUER, declare as follows:

3     I am the Fixed Site Imaging Manager for AMERICAN DIAGNOSTIC MEDICINE, INC.
4  and am authorized to make this verification on its behalf.   I have read **DEFENDANT**
5  **AMERICAN DIAGNOSTIC MEDICINE'S RESPONSES TO PLAINTIFF LEWIS**
6  **GARING JR'S INTERROGATORIES, SET ONE** and know the contents thereof.   To the
7  extent I have personal knowledge of the matters set forth therein, the same are true and correct.
8  Insofar as said matters are a composite of the information of many individuals, I do not have
9  personal knowledge concerning all of the information contained in said responses but I am
10 informed and believe that the information set forth therein for which I lack personal knowledge
11 is true and correct.

12     I declare under penalty of perjury under the laws of the State of California that the
13 foregoing is true and correct.

14     Executed this _9th_ day of April, 2010 at _Batavia_____, Illinois.

15
16
17     JAN HAUSENBAUER
18
19
20
21
22
23
24
25
26
27
28

Irvine 622801.1

**VERIFICATION**

1

## CERTIFICATE OF SERVICE

2          I, the undersigned, am employed in the County of Orange, State of California.  I am
over the age of 18 and not a party to the within action; am employed with the law offices of
3  Fisher & Phillips LLP and my business address is 2050 Main Street, Suite 1000, Irvine,
California 92614.

4

5          On **April 7, 2010**, I served the foregoing document entitled **DEFENDANT
AMERICAN DIAGNOSTIC MEDICINE, INC.'S RESPONSE TO PLAINTIFF LEWIS
GARING, JR.'S INTERROGATORIES (SET ONE)**, on all the appearing and/or interested
6  parties in this action by placing ☒ *the original* ☐ *a true copy* thereof enclosed in sealed
envelope(s) addressed as follows:

7

8                          **SEE ATTACHED MAILING LIST**

☒          **[by MAIL]**    I am readily familiar with the firm's practice of collection and processing
9          correspondence for mailing.  Under that practice it would be deposited with the U.S.
Postal Service on that same day with postage thereon fully prepaid at Irvine, California
10          in the ordinary course of business.  I am aware that on motion of the party served,
service is presumed invalid if postage cancellation date or postage meter date is more
11          than one day after date of deposit for mailing this affidavit.

12  ☐          **[by PERSONAL SERVICE]** I caused to be delivered by messenger such envelope(s)
by hand to the office of the addressee(s).  Such messenger is over the age of eighteen
13          years and not a party to the within action and employed with ASAP Corporate Services,
Inc., whose business address is 17817 Gillette Avenue, Irvine, California 92614.

14

☒          **FEDERAL**  -  I declare that I am employed in the office of a member of the bar of this
15          Court at whose direction the service was made.

16          Executed on **April 7, 2010**, at Irvine, California.

17

18  DOROTHY MJ. WANG                          By: _____
              Print Name                                              Signature

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE

Irvine 618810.1

1

MAILING LIST
*Michele Draper, et al. v. ADM*

2

3

| Nicholas A. Carlin, Esq. | Attorney for Plaintiffs, |
|---|---|
| Email: nac@phillaw.com | MICHELE DRAPER, MERIWETHER |
| PHILLIPS, ERLEWINE & GIVEN | LEWIS GARING, JR., JOHN VALENTON, |
| 50 California Street, 35th Floor | ROBERT ERSKINE, FLORA YU, |
| San Francisco, CA 94111 | JONATHAN D. SINGLETON and |
| (415) 398-0900  Fax: (415) 398-0911 | QUINN RANSON |

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6
CERTIFICATE OF SERVICE

Irvine 618810.1

1   TIMOTHY J. MURPHY, Bar No. 54200
      Email: tmurphy@laborlawyers.com
2   TODD B. SCHERWIN, Bar No. 239848
      Email: tscherwin@laborlawyers.com
3   SHADIE L. BERENJI, Esq., Bar No. 235021
      Email: sberenji@laborlawyers.com
4   FISHER & PHILLIPS LLP
      2050 Main Street, Suite 1000
5   Irvine, California 92614
      Telephone (949) 851-2424
6   Facsimile (949) 851-0152

7   Attorneys for Defendants
      AMERICAN DIAGNOSTIC MEDICINE, INC., SAM KANCHERLAPALLI,
8   VICKY KANCHERLAPALLI and JANET HAUSENBAUER

9

10               UNITED STATES DISTRICT COURT

11      FOR THE NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO

12

13   MICHELE DRAPER, MERIWETHER       Case No. C 09-02753 VRW
      LEWIS GARING, JR., JOHN VALENTON,
14   ROBERT ERSKINE, FLORA YU,
      JONATHAN D. SINGLETON and QUINN    DEFENDANT AMERICAN DIAGNOSTIC
15   RANSON,                          MEDICINE, INC.'S RESPONSE TO
                                    PLAINTIFFS' REQUEST FOR
16                                    PRODUCTION OF DOCUMENTS
                        Plaintiffs,   (SET THREE)
17        vs.

18   AMERICAN DIAGNOSTIC MEDICINE,
      INC., an Illinois Corporation, SAM
19   KANCHERLAPALLI, VICKY
      KANCHERLAPALLI, JAN
20   HAUSSENBAUER and DOES 4 through 50,

21                       Defendants.

22

23   PROPOUNDING PARTY:   ALL PLAINTIFFS

24   RESPONDING PARTY:    Defendant, AMERICAN DIAGNOSTIC MEDICINE, INC.

25   SET NUMBER:         THREE

26       Pursuant to Rule 34 of *Federal Rules of Civil Procedure*, Defendant AMERICAN

27   DIAGNOSTIC MEDICINE, INC. ("Defendant") responds to Plaintiffs' third set of request for

28   production of documents (the "Request") as follows:

1  **REQUEST FOR PRODUCTION NO. 96:**

2      The laptop computer used by Michele Draper when she was employed by ADM ("the

3  LAPTOP").

4  **RESPONSE TO REQUEST FOR PRODUCTION NO. 96:**

5      Defendant has agreed to make the computer available for inspection by a computer

6  forensic expert at a mutually agreeable date and time.

7  **REQUEST FOR PRODUCTION NO. 97:**

8      All DOCUMENTS which YOU have extracted from the LAPTOP since it was returned

9  to ADM by Draper after her termination.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 97:**

11      Objection.  This request is harassing and improperly seeks documents and information

12  protected by the attorney-client privilege and/or work product doctrine.   Moreover, this

13  interrogatory is vague, ambiguous, and overbroad. Defendant is unable, without speculating, to

14  determine what the term "extracted" as used herein is intended to mean.

15  **REQUEST FOR PRODUCTION NO. 98:**

16      All DOCUMENTS which refer to, relate to or concern the extraction of DOCUMENTS

17  from the LAPTOP, including but not limited to forensic expert reports, notes, memoranda,

18  analyses, and emails.

19  **RESPONSE TO REQUEST FOR PRODUCTION NO. 98:**

20      Objection.  This request is harassing and improperly seeks documents and information

21  protected by the attorney-client privilege and/or work product doctrine.   Moreover, this

22  interrogatory is vague, ambiguous, and overbroad. Defendant is unable, without speculating, to

23  determine what the terms "refer to" "relate to" "concern the extraction" "reports" "notes"

24  "memoranda" "analyses" and "emails" as used herein are intended to mean.

25  **REQUEST FOR PRODUCTION NO. 99:**

26      All DOCUMENTS which refer to, relate to or concern the DOCUMENTS extracted

27  from the LAPTOP, including but not limited to notes, memoranda, analyses, and emails.

28  //

2

ADM'S Response to Plaintiffs' Request for Production (Set Three)
Case No. C 09-02753 VRW

Irvine 618808.1

1   **RESPONSE TO REQUEST FOR PRODUCTION NO. 99:**

2       Objection.  This request is harassing and improperly seeks documents and information

3   protected by the attorney-client privilege and/or work product doctrine.   Moreover, this

4   interrogatory is vague, ambiguous, and overbroad.  Defendant is unable, without speculating, to

5   determine what the terms "refer to" "relate to" "concern the DOCUMENTS extracted" "notes"

6   "memoranda" "analyses" and "emails" as used herein are intended to mean.

7   **REQUEST FOR PRODUCTION NO. 100:**

8       All DOCUMENTS which refer to, relate to or concern review of the DOCUMENTS

9   extracted from the LAPTOP, including but not limited to notes, memoranda, analyses, and

10  emails.

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 100:**

12      Objection.  This request is harassing and improperly seeks documents and information

13  protected by the attorney-client privilege and/or work product doctrine.   Moreover, this

14  interrogatory is vague, ambiguous, and overbroad.  Defendant is unable, without speculating, to

15  determine what the terms "refer to" "relate to" "concern review of the DOCUMENTS

16  extracted" "notes" "memoranda" "analyses" and "emails" as used herein are intended to mean.

17  **REQUEST FOR PRODUCTION NO. 101**

18      All DOCUMENTS which refer to, relate to or concern the existence of privileged

19  documents on the LAPTOP.

20  **RESPONSE TO REQUEST FOR PRODUCTION NO. 101**

21      Objection.  This request is harassing and improperly seeks documents and information

22  protected by the attorney-client privilege and/or work product doctrine.   Moreover, this

23  interrogatory is vague, ambiguous, and overbroad.  Defendant is unable, without speculating, to

24  determine what the terms "refer to" "relate to" and "concern the existence of privileged

25  documents" as used herein are intended to mean.

26  **REQUEST FOR PRODUCTION NO. 102**

27      All witness statements pertaining in any way to this case, whether written or recorded.

28

ADM'S Response to Plaintiffs' Request for Production (Set Three)
Case No. C 09-02753 VRW

Irvine 618808.1

1  **RESPONSE TO REQUEST FOR PRODUCTION NO. 102**

2       Objection.  This request may seek documents and information protected by the

3  attorney-client privilege and/or work product doctrine.  Moreover, this interrogatory is vague,

4  ambiguous, and overbroad.  Defendant is unable, without speculating, to determine what the

5  term "witness statements" as used herein is intended to mean.

6       Without waiving the foregoing objections, Defendant responds as follows:

7       After a diligent search and reasonable inquiry, Defendant is unable to respond to this

8  request as it has no such documents in its possession, custody, or control.

9  **REQUEST FOR PRODUCTION NO. 103**

10      All DOCUMENTS which refer to, relate to or concern any complaints made to YOU by

11  any third party (including but not limited to customers) about Michele Draper's job

12  performance.

13  **RESPONSE TO REQUEST FOR PRODUCTION NO. 103**

14      Objection.  This request may seek documents and information protected by the

15  attorney-client privilege and/or work product doctrine.  Moreover, this interrogatory is vague,

16  ambiguous, and overbroad.  Defendant is unable, without speculating, to determine what the

17  terms "refer to" "relate to" and "concern any complaints"

18      Without waiving the foregoing objections, Defendant responds as follows:

19      After a diligent search and reasonable inquiry, Defendant has produced all non-

20  privileged documents which are believed to be responsive to this request and are in its

21  possession, custody, or control.

22

23  Date: April 7, 2010

                              FISHER & PHILLIPS LLP
24
                    By:
25                         TIMOTHY J. MURPHY
                           TODD B. SCHERWIN
26                         SHADIE L. BERENJI
                           Attorneys for Defendants
27                         AMERICAN DIAGNOSTIC MEDICINE,
                           INC., SAM KANCHERLAPALLI,
28                         VICKY KANCHERLAPALLI and
                           JANET HAUSENBAUER

                                    4

## CERTIFICATE OF SERVICE

I, the undersigned, am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; am employed with the law offices of Fisher & Phillips LLP and my business address is 2050 Main Street, Suite 1000, Irvine, California 92614.

On **April 7, 2010,**  I served the foregoing document entitled **DEFENDANT AMERICAN DIAGNOSTIC MEDICINE, INC.'S RESPONSE TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS (SET THREE)**, on all the appearing and/or interested parties in this action by placing ☒ *the original* ☐ *a true copy* thereof enclosed in sealed envelope(s) addressed as follows:

### SEE ATTACHED MAILING LIST

☒     **[by MAIL]**     I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

☐     **[by PERSONAL SERVICE]** I caused to be delivered by messenger such envelope(s) by hand to the office of the addressee(s).  Such messenger is over the age of eighteen years and not a party to the within action and employed with ASAP Corporate Services, Inc., whose business address is 17817 Gillette Avenue, Irvine, California 92614.

☒     **FEDERAL** - I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on **April 7, 2010**, at Irvine, California.

DOROTHY MJ. WANG                    By: _____
Print Name                                                          Signature

CERTIFICATE OF SERVICE

Irvine 618808.1

1

2

<u>MAILING LIST</u>
*Michele Draper, et al. v. ADM*

3

| Nicholas A. Carlin, Esq.<br>Email: nac@phillaw.com<br>PHILLIPS, ERLEWINE & GIVEN<br>50 California Street, 35th Floor<br>San Francisco, CA 94111<br>(415) 398-0900  Fax: (415) 398-0911 | Attorney for Plaintiffs,<br>MICHELE DRAPER, MERIWETHER<br>LEWIS GARING, JR., JOHN VALENTON,<br>ROBERT ERSKINE, FLORA YU,<br>JONATHAN D. SINGLETON and<br>QUINN RANSON |
|---|---|

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE

Irvine 618808.1

EXHIBIT H

AO 88A (Rev. 01/09) Subpoena to Testify at a Deposition or to Produce Documents in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELE DRAPER, et al. | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | )     Civil Action No. C 09-02753 (VRW) |
| AMERICAN DIAGNOSTIC MEDICINE, INC., an | ) |
| Illinois Corporation, et al. | )     (If the action is pending in another district, state where: |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION
## OR TO PRODUCE DOCUMENTS IN A CIVIL ACTION

To:TODD STEPHAN, c/o Talon Cyber, 151 Kalmus Drive, Suite A-103, Costa Mesa, CA 92626

[ X ] *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Sheppard, Mullin, Richter & Hampton, LLC, 1901 Avenue of the Stars, Ste. 1600, Los Angeles, CA 90067 | Date and Time: Apr. 1, 2010 ; 10:00 a.m. |
|---|---|

The deposition will be recorded by this method: <u>stenographically</u>

X   *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: That certain laptop used by plaintiff Michele Draper during her employment by ADM; all documents referring or relating to the laptop; all documents referring or relating to data extracted from that laptop; all communications referring or relating to any of the above.

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: _____

*CLERK OF COURT*

        OR

_____      _____
    *Signature of Clerk or Deputy Clerk*                 *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* plaintiffs _____
_____ , who issues or requests this subpoena, are:
Nicholas A. Carlin, Phillips, Erlewine & Given LLP, 50 California Street, 35th Floor, San Francisco, CA 94111 (415) 398-0900

AO-88A

EXHIBIT I

| Attorney or Party without Attorney:<br>NICHOLAS A. CARLIN, ESQ.<br>PHILLIPS, ERLEWINE & GIVEN LLP<br>50 CALIFORNIA STREET<br>35TH FLOOR<br>SAN FRANCISCO, CA  94111<br>Telephone No: (415) 398-0900 | | For Court Use Only |
|---|---|---|
| | Ref. No or File No.:<br>8394.1 | |
| Insert name of Court, and Judicial District and Branch Court:<br>United States District Court For The Northern District Of California | | |
| Plaintiff: MICHELE DRAPER | | |
| Defendant: AMERICAN DIAGNOSTIC MEDICINE, INC.. | | |

| NON SERVICE/RETURN | Hearing Date:<br>Thu, Apr. 01, 2010 | Time:<br>10:00am | Dept/Div: | Case Number:<br>C 09-02753 (VRW) |
|---|---|---|---|---|

1.  I, FRANK HARRIGAN, and any employee or independent contractors retained by NATIONWIDE LEGAL, INC.  are and were on the dates mentioned herein over the age of eighteen years and not a party to this action.  Personal service was attempted on Defendant TODD STEPHAN, c/o TALON CYBER, 151 Kalmus Drive, Suite A-103, Costa Mesa, CA 92626 as follows:

2.  *Documents:*  SUBPOENA TO TESTIFY AT A DEPOSITION OR TO PRODUCE DOCUMENTS IN A CIVIL ACTION (Commanded to Appear and Produce)..

| Day | Date | Time | Location | R e s u l t s |
|---|---|---|---|---|
| Thu | 03/18/10 | 3:00pm | Business | 1. ADDRESS: 151 KALMUS DRIVE SUITE A-103, COSTA MESA CA 92626: PER 'BARRY', SUBJECT NOT IN AND STATED THAT SUBJECT DOES NOT WORK ON THIS LOCATION. 'BARRY' CALLED SUBJECT ON HIS CELL PHONE AND PER SUBJECT, HE WOULD NOT ACCEPT THE DOCUMENTS. GIVEN ADDRESS IS A VERY SECURE BUILDING WITH ARMED SECURITY GUARDS, NEED TO GET BUZZED IN TO GAIN ENTRY. Attempt made by: FRANK  HARRIGAN. |
| Wed | 03/24/10 | 4:28pm | | NEW ADDRESS PROVIDED PER CLIENT. |
| Mon | 03/29/10 | 2:00pm | Business | 2. ADDRESS: 17195 NEWHOPE ST. SUITE 207, FOUNTAIN VALLEY CA 92018: GIVEN ADDRESS IS "NEW HORIZON LAW GROUP", OFFICE CLOSED. Attempt made by: FRANK  HARRIGAN. |
| Tue | 03/30/10 | 11:30am | Business | DOOR LOCKED. AFTER THE SERVER BANGED ON THE DOOR A YOUNG MAN ANSWERED AND SAID THAT SUBJECT MOVED OUT 2 YEARS AGO. Attempt made by: FRANK  HARRIGAN. |
| Tue | 04/13/10 | 4:17pm | | CANCEL AFTER NON-SERVICE. |

3.  *Person Executing*
    a. FRANK  HARRIGAN
    **b. NATIONWIDE LEGAL, INC.**
       820 NORTH PARTON STREET
       SUITE 203
       SANTA ANA, CA  92701
    c. (714) 558-2400

Recoverable Costs Per CCP 1033.5(a)(4)(B)
*d. The Fee for service was:*
*e. I am:*  (3)  registered California process server
    *(i)*   Independent Contractor
    *(ii)*  *Registration No.:*      1530
    *(iii)* *County:*               Orange

4.  *I declare under penalty of perjury under the laws of the State of California and under the laws of the United States Of America that the foregoing is true and correct.*

Date: Fri, Apr. 16, 2010             **NON SERVICE/RETURN**             (FRANK  HARRIGAN)240605.niccar.123869

# Business Entity Detail

Data is updated weekly and is current as of Friday, April 16, 2010. It is not a complete or certified record of the entity.

| | |
|---|---|
| Entity Name: | TALON CYBER TEC, LLC |
| Entity Number: | 200513910205 |
| Date Filed: | 05/16/2005 |
| Status: | ACTIVE |
| Jurisdiction: | CALIFORNIA |
| Entity Address: | 17195 NEWHOPE ST STE 207 |
| Entity City, State, Zip: | FOUNTAIN VALLEY CA 92708 |
| Agent for Service of Process: | RONALD WILLIAMS |
| Agent Address: | 17195 NEWHOPE ST, STE 207 |
| Agent City, State, Zip: | FOUNTAIN VALLEY CA 92708 |

* Indicates the information is not contained in the California Secretary of State's database.

* **Note:** If the agent for service of process is a corporation, the address of the agent may be requested by ordering a status report.

- For information on checking or reserving a name, refer to Name Availability.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to Information Requests.
- For help with searching an entity name, refer to Search Tips.
- For descriptions of the various fields and status types, refer to Field Descriptions and Status Definitions.

EXHIBIT J

MICHELE DRAPER - DECEMBER 22, 2009

1            UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3

4  MICHELE DRAPER, MERIWETHER  )
   LEW GARING, JR., JOHN       )
5  VALENTON, ROBERT ERSKINE,   )
   FLORA YU, JONATHAN D.       )
6  SINGLETON, and QUINN RANSON,)
                  Plaintiffs,  )
7                              )  Case No.: C 09-02753 (VRW)
   vs.                         )  VOLUME I
8                              )  Pages 1 to 270
   AMERICAN DIAGNOSTIC         )
9  MEDICINE, INC., an Illinois )
   Corporation, SAM            )
10 KANCHERLAPALLI, VICKY       )
   KANCHERLAPALLI, JAN         )
11 HAUSENBAUER, and DOES 4     )
   through 50,                 )
12           Defendants.       )
                               )
13 _____)

14

15      VIDEOTAPED DEPOSITION OF MICHELE DRAPER

16         Tuesday, December 22, 2009

17

18

19 Reported by:

20 HEIDI BELTON, CSR #12885, RPR            

21

22           JAN BROWN & ASSOCIATES

23    NATIONWIDE DEPOSITION & VIDEOGRAPHY SERVICES

24  701 Battery Street, 3rd Floor, San Francisco, CA 94111

25              (415) 981-3498

1

MICHELE DRAPER - DECEMBER 22, 2009

1      Q.   And you don't have any estimate or best

2  recollection as to how you described your job duties at

3  ADM when you applied for those jobs?

4      **A.   No, I do not.**

5      Q.   Did you tell anybody subsequent to your

6  employment at ADM that as an employee of ADM you

7  supervised more than 10 people?

8      **A.   To the best of my knowledge I don't remember.**

9      Q.   After your employment with ADM ended, did you

10  ever tell anybody that you managed and supervised six

11  mobile vans?

12      **A.   I don't remember, to the best of my knowledge.**

13      Q.   After your employment with ADM ended, did you

14  ever write to anybody that you managed and supervised

15  six mobile vans?

16      **A.   I don't remember, to the best of my knowledge.**

17      Q.   After your employment at ADM ended, did you

18  ever tell anybody or write that you managed and

19  supervised two fixed sites as an employee of ADM?

20      **A.   I don't remember, to the best of my knowledge.**

21      Q.   Okay.  As an employee -- as an employee of

22  ADM, did you supervise any employees?

23      **A.   No, I did not.**

24      Q.   When applied for jobs, assuming you did after

25  your employment with ADM ended, what did you say was the

52

JAN BROWN & ASSOCIATES   (800)  522-7096   (415)  981-3498

MICHELE DRAPER – DECEMBER 22, 2009

1   reason for your reason -- your reason for leaving ADM?

2   Strike that.  Let me repeat that.

3           After your employment with ADM ended, what did

4   you say was the reason that your employment with ADM

5   ended?

6       A.   **I don't remember.**

7       Q.   Why did your employment with ADM end?

8       A.   **I don't know.**

9       Q.   Were you terminated?

10      A.   **Yes, I was.**

11      Q.   Was it a mutual agreement to leave your

12  employment with ADM?

13      A.   **No, it was not.**

14      Q.   What is IDTS?

15           MR. CARLIN:  I'm going to object.  Relevance.

16  Privacy.  Instruct not to answer.

17  BY MR. SCHERWIN:

18      Q.   Are you going to follow your counsel's

19  instruction?

20      A.   **Yes, I am.**

21           MR. SCHERWIN:  Nick, that's a foundational

22  question.  I need to lay the foundation because there's

23  certainly relevant questions that need to be asked

24  regarding what ITDS is.  So objecting to a basic

25  question like that completely impedes my ability to take

53